

DEC 29 2022

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

IN THE MATTER OF THE APPLICATION  )
BY THE UNITED STATES OF AMERICA  )  CASE NO. 3:22-MJ-1250
FOR A WARRANT AUTHORIZING THE  )
SEARCH OF THE APARTMENT RESIDENCE  )
LOCATED AT 3101 ESSARY DR, WEST  )
APARTMENT, KNOXVILLE, TN 37918  )

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Philip M. Jinks, a Task Force Officer ("TFO") with the Drug Enforcement
Administration ("DEA"), being duly sworn, deposes and states:

### INTRODUCTION

1.      I am an "investigative or law enforcement officer of the United States" within the meaning
of Title 21 of the United States Code, who is empowered by law to conduct investigations of, and
to make arrests for, offenses enumerated in Title 21.  I have been involved in the field of law
enforcement since 1998 and am presently assigned as a Task Force Officer ("TFO") for the United
States Drug Enforcement Administration ("DEA") and have been so since August of 2021.  In that
role, I am responsible for investigating crimes that involve unlawful importation and exportation of
controlled substances, the possession with the intent to distribute controlled substances, the
distribution of controlled substances, the use of communication facilities to further these offenses,
as well as the related laundering of monetary instruments, in violation of Title 21, United States
Code, Sections 841 (Illegal Distribution and Dispensing of Controlled Substances), 846
(Conspiracy to Distribute and Dispense Controlled Substances); and violations of Title 18, United

1

States Code, Sections 1956 and 1957 (Money Laundering). I am currently assigned to the Knoxville District Office.

2.      I have been employed as a police officer with the City of Knoxville, Tennessee since December 1998. I am currently assigned to the Knoxville Police Department's Organized Crime Unit, a unit that is charged with the investigation of criminal conduct relating to controlled substances, gang crime, criminal conspiracies, and other criminal schemes. In the performance of my duties both as a uniformed law enforcement officer and a narcotics investigator, I have conducted and participated in numerous investigations involving illegal drugs, criminal conspiracies, and other general investigations of state and federal laws. Those investigations have included state and federal wire-taps, writing and executing search warrants, undercover operations, utilizing confidential informants, conducting physical and electronic surveillance, conducting interviews with witnesses and defendants, and many other investigative techniques. I have received specialized training in drug investigations from the Knoxville Police Department Training Academy, the Regional Counterdrug Training Academy, the Multi-Jurisdictional Counterdrug Task Force, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, and Firearms, the Tennessee Methamphetamine Task Force, the Tennessee Bureau of Investigation, the National District Attorney's Association, the Tennessee Narcotics Officer Association, the Institute of Police Technology and Management, the National Gang Crime Research Center, Cellebrite, and other various agencies. I have been recognized as an expert in narcotics investigations and conspiracy investigations and have testified as such in the Sixth Judicial District Criminal Court in Knoxville, TN and in the Federal Court for the Eastern District of Tennessee. I know from my training and experience that those who traffic and distribute controlled substances keep and maintain in their residences and bases of operation the following items:

2

- Printed or digital property that includes records, receipts, notes, ledgers, and other papers and packages relating to drug trafficking to, from, and within the Eastern District of Tennessee, including but not limited to receipts, papers, tickets, notes, schedules, and other items relating to transactions, address books, telephone books, and papers reflecting names, addresses, and telephone numbers of associates including drug associates, customers, and/or suppliers;
- Bank statements and records, wire transfer documents including wire transfer receipts, receipts of money orders and cashier's checks, deposit bank records, keys to safe deposit boxes, and keys, access codes, and records relating to storage facilities, all of which evidence the obtaining, transferring and concealment of assets associated with or obtained through drug trafficking;
- United States currency and financial instruments, including but not limited to stocks, and bonds, and vehicle title documents, all of which constitute the proceeds of drug trafficking and which constitute the operating capital for continued drug trafficking;
- Photographs of drug customers and suppliers and other coconspirators in the drug trafficking trade and photographs of assets or of controlled substances;
- Controlled substances and paraphernalia for packaging, cutting, weighing, and distributing controlled substances, including, but not limited to, scales, pill presses, baggies, tourniquets, and syringes;
- Firearms, ammunition, and firearm accessories possessed with controlled substances; and
- Electronic devices, cellular telephones, tablets, laptop computers, desktop computers, camera recording devices, and external storage devices containing images, records of communication, and information pertaining to the distribution of controlled substances.

3.     I have personally participated in the investigation set forth below.  I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents and task force officers with various agencies involved in the investigation and from my review of records and reports relating to the investigation.  This was a joint investigation

3

between DEA and the Knoxville Police Department (KPD). All information within this affidavit is from my own personal participation in the investigation, discussions directly with law enforcement officers assisting with the investigation, and review of various videos of controlled purchases, reports, and other related investigative tools.

4.        I am submitting this affidavit in support of an application for a search warrant to search the apartment residence located at 3101 Essary Dr., West Apartment, Knoxville, TN 37918, as more fully described in Attachment A (hereinafter "TARGET LOCATION").

5.        Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant authorizing the search of TARGET LOCATION, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that TARGET LOCATION contains evidence, fruits, and instrumentalities of violations of Title 21, U.S.C. § 841, as further described in Attachment B.

## PROBABLE CAUSE

6.        Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, have been committed by Brandon EDWARDS and others, known and unknown, as explained below. There is also probable cause to believe that the items described in Attachment B will constitute evidence of theses criminal violations, and/or will lead to the identification of individuals who are engaged in the commission of these offenses.

7.        Since early 2021, investigators with the Knoxville Police Department Organized Crime Unit (KPD OCU) and agents and task force officers with the Drug Enforcement Administration

4

(DEA) have been receiving information from multiple sources regarding a drug trafficking organization (DTO) operating primarily in and around the Walter P. Taylor housing development. The sources have advised that the DTO is led by EDWARDS. Sources have advised that EDWARDS is responsible for supplying the DTO with heroin, cocaine, methamphetamine, and marijuana for distribution.

8.      On July 30, 2022, Detectives John Sharp and Matt Johnson with the Knox County Sheriff's Office Narcotics Unit conducted a traffic stop on a Chevrolet Tahoe for traffic violations on Olive St near Linden Ave, near the Walter P. Taylor development, in Knoxville, Tennessee. The driver was identified as EDWARDS, and the only passenger was identified as Jalisha Smith. Upon approaching the vehicle, the officers detected a strong odor of marijuana emanating from the vehicle and a probable cause search was conducted. During the search, the officers located approximately 21 grams of marijuana and 8 suspected hydrocodone pills in a purse in the vehicle. When made aware of the contraband that was found in the vehicle, EDWARDS made an unsolicited statement that the pills were his. EDWARDS and Jalisha Smith were taken into custody. During a search incident to arrest, EDWARDS was found to be in possession of a large undetermined amount of U.S. Currency in his pants pocket and two smart-phone type cell phones. The phones and currency were released to an individual identifying himself as the brother of EDWARDS who had arrived on the scene of the stop. EDWARDS and Jalisha Smith were transported to the Roger D. Wilson Detention Facility. During an intake search of Jalisha Smith, correction officers located approximately 35 grams of suspected crack cocaine and approximately 3 grams of suspected heroin concealed in her underwear. While officers were completing the booking process for EDWARDS, he began to exhibit symptoms of an opiate overdose and officers noticed what appeared to be a plastic bag in

5

his mouth. The officers administered Narcan, an opiate overdose reversal drug and then transported EDWARDS to the hospital for evaluation. While at the hospital, EDWARDS reiterated that the suspected hydrocodone found in the vehicle was his. Based on my training and experience, I know that drug distributors will often recruit female companions to conceal controlled substances in or on their persons during law enforcement encounters to distance themselves from the illegal activity and because of the perceived reduced likelihood of a thorough search of a female by law enforcement officers. Furthermore, based on EDWARDS' possession of a large amount of loose U.S. Currency during the stop, it is probable that the large amount of cocaine was constructively possessed by both individuals with intent to distribute it.

9. On August 11, 2022, Officer Howard Pittenger and Officer Steven Henderson with KPD conducted a traffic stop on a black Hummer H3 that was being driven by EDWARDS. The officers were aware that EDWARDS had an outstanding arrest warrant for vandalism and that was the basis for the stop. EDWARDS was taken into custody on the outstanding arrest warrant. During a search incident to arrest, EDWARDS was found to be in possession of a white Apple iPhone and a black Apple iPhone. The search of the Hummer also resulted in the discovery of approximately 20 suspected Oxycodone pills. At my request, the Apple iPhones were seized by the arresting officers. On August 12, 2022, I applied for a warrant to search the content of the two Apple iPhones found in the possession of EDWARDS. The Honorable Steve Sword, Judge of the Criminal Court for Knox County, Tennessee reviewed the affidavits filed in support of the application and granted the warrant to conduct the search. Both phones contained messages that, based on my training and experience, are indicative of EDWARDS being involved in the distribution of controlled substances in the Eastern District of Tennessee.

6

The following is an example of a drug related text exchange that was extracted from the black iPhone that occurred on July 30, 2022:

> I/C from (615) 917-9496: You in town I need soft.
>
> O/G from EDWARDS: How Much
>
> I/C from (615) 917-9496: Half

I know from my training and experience that the term "soft" is common slang used to refer to cocaine hydrochloride, or powder cocaine. I further know that the term "half" is often used when referring one-half ounce. Based on my training and experience, this message exchange represents a drug customer informing EDWARDS that he is interested in purchasing powder cocaine. EDWARDS then inquiries about the amount desired and the customer responds that he wants one-half ounce.

10.     The following is an example of a drug related text exchange that was extracted from the white iPhone that occurred on July 3, 2022:

> I/C from (865) 910-3691: I really don't understand your problem
>
> O/G from EDWARDS-: That's the problem
>
> O/G from EDWARDS: Clear as day I was trapping u busted up and made me miss out on ten thousand tf

I know from my training and experience that the term "trapping" is common slang used to refer to selling and distributing illegal drugs and a "trap" is a location used as a platform for drug distribution. Based on the totality of the circumstances, I believe that this text exchange is EDWARDS complaining to the other party about them interrupting his drug dealing efforts, thus causing him to miss out on $10,000 in drug sales. In addition to the text messages indicative of drug trafficking, the court-authorized search of the phones resulted in the discovery of

7

photographs of Pyrex measuring glasses with a white residue next to baking soda, and digital scales with what appears to be controlled substances on the weighing surface. I know from training and experience that Pyrex measuring glasses and baking soda are frequently used in the cocaine base manufacturing process. Furthermore, the search of both phones indicated that the Apple ID assigned to the phones was east19five@icloud.com with an associated name of "Elvis Johnson". I know from training and experience that drug distributors often register accounts, such as Apple accounts, in fictitious names to avoid law enforcement detection. I also know from this investigation that Brandon EDWARDS uses the nickname "Nineteen".

11.     On October 26, 2022, I received information from a confidential source that EDWARDS was operating a white, two-door Cadillac. On the same date, I located a white, two-door Cadillac bearing Tennessee registration BLN 8098 parked in front of 137 S. Olive Street, a location within the Walter P. Taylor development known to be frequented by EDWARDS. A records check confirmed that the white, two-door Cadillac was registered to EDWARDS.

12.     On October 27, 2022, KPD officers and agents with the DEA conducted a surveillance operation on EDWARDS in Knoxville, Tennessee. During the operation, EDWARDS was observed in the white, two-door Cadillac previously described. Surveillance was maintained as EDWARDS drove to several locations, making numerous stops. At one point, EDWARDS was observed parking behind 215 Odd Fellows St in the Walter P. Taylor Homes development. EDWARDS made contact with several people in the parking lot, then exited the Cadillac and entered the rear door of the 215 Odd Fellows St while carrying a backpack. After a few minutes, EDWARDS exited the rear door of the 215 Odd Fellows St and returned to the Cadillac. EDWARDS then drove away. DEA Task Force Officer Nathan Stinnett and I maintained surveillance on the 215 Odd Fellows St while another surveillance team continued to follow

8

EDWARDS.  Within minutes of EDWARDS leaving the apartment, an unusually large number of individuals began visiting the 215 Odd Fellows St.  Some of the visitors approached on foot, while others arrived in vehicles.  Most of the visitors arrived, knocked on the door, and were permitted entry to the apartment.  After only a short period of time, the visitor would leave the apartment and either walk away or return to their vehicle.  On one occasion, an unknown black male who had been observed coming and going from the apartment prior to EDWARDS' arrival, exited the apartment and met with an unknown female who had arrived in a vehicle.  The male leaned into the window and appeared to engage in a hand-to-hand transaction with the female driver.  The driver then drove away and the male returned to the 215 Odd Fellows St.  I know from my training and experience that the activity described above is consistent with drug distribution taking place at a residential location.  Based on the totality of the circumstances, I believe that EDWARDS supplied the occupants of 215 Odd Fellows Street with controlled substances, at which point customers began to frequent the apartment.  Based on the text exchange displayed and explained above, I believe that 215 Odd Fellows Street is one of EDWARDS' "traps".  Upon making a request to the Knoxville Community Development Corporation, which manages the apartment complex, I learned that Glenna BLACK is the primary resident of 215 Odd Fellows Street.

13.     In late October 2022, KPD Organized Crime Unit (OCU) Investigator DionDre Jackson cultivated a confidential source (CS) during an unrelated investigation.  The CS advised that he/she could buy heroin from a black male he/she only knows as "Gucci" who sells drugs from an apartment near the Cherokee Health office in the Walter P. Taylor Homes housing development.  215 Odd Fellows St is near Cherokee Health.  Investigator Jackson's investigation confirmed that the CS could make controlled buys from 215 Odd Fellows St.  Furthermore, I

know that Azely TAYLOR is from Detroit, MI and uses the street name "Gucci". During the course of this investigation, I have interviewed Azely TAYLOR regarding his knowledge of the Brandon EDWARDS DTO.

14.     During the course of the investigation, agents and officers utilized the CS to make three separate controlled purchases of suspected fentanyl from Azely TAYLOR, Glenna BLACK, Gregory JOHNSON, and an unknown black male inside 215 Odd Fellows St.

15.     On November 16, 2022, I requested the assistance of a public utility company to install a surveillance camera on public utility pole near the Walter P. Taylor development. The camera captured only video and no audio. The camera captured the parking lot behind 215 Odd Fellows St, and the doors to multiple apartments, to include the rear door of the 215 Odd Fellows St. The video feed from the camera could be remotely viewed in real time. Additionally, video footage is temporarily stored and can be reviewed by investigators from a remote location. Following the installation of the camera, I observed an unusually large amount of foot and vehicular traffic coming and going to and from 215 Odd Fellows St. The daily activity that occurred during that timeframe at 215 Odd Fellows St. was consistent with what was observed during the physical surveillance operation as detailed in paragraph 12 of this affidavit. Approximately 40-60 visitors per day visit the 215 Odd Fellows St. in this manner. Some visitors made repeated trips to the residence daily. The amount of traffic at 215 Odd Fellows St. far exceeded the amount of activity at any other residence in the neighborhood that was visible via the covert camera. I know from training and experience that this type of activity was consistent with drug customers purchasing controlled substances from individuals within 215 Odd Fellows. In addition to the large number of suspected drug customers, I also observed vehicles known to be registered to Brandon EDWARDS, a red Chevrolet Camaro and the white Cadillac previously referenced,

10

frequenting 215 Odd Fellows St on multiple occasions. On several occasions, the camera captured video of Brandon EDWARDS and Azely TAYLOR coming in and out of the apartment. After reviewing multiple days of video footage, it became apparent that Azely TAYLOR arrived at the apartment every morning between approximately 10:00 am and 11:00 am. On most mornings, Azely TAYLOR was dropped off by a female in a vehicle. On other days, Azely TAYLOR was observed driving a vehicle to the 215 Odd Fellows St. Azely TAYLOR appeared to leave 215 Odd Fellows St almost every night between approximately 10:00 pm and midnight.

16.     During the course of the investigation, agents located a residence associated with Brandon EDWARDS at 1220 Woodberry Dr in Knoxville, TN. Surveillance operations have resulted in officers locating multiple vehicles registered to Brandon EDWARDS, including the Camaro and Cadillac previously referenced, parked at the residence and court-authorized geo-location "pings" of his cell phone indicated that EDWARDS was spending most overnight hours at this location. 1220 Woodberry Dr is located within the Knoxville city limits and therefore has trash pickup service provided by Waste Connections. I contacted a supervisor at Waste Connections and verified that the normal day for trash pickup at 1220 Woodberry was every Wednesday morning. I then made arrangements to meet with representatives from Waste Connections on the morning of Wednesday, November 23, 2022 to collect the trash from 1220 Woodberry Dr. On November 23, 2022 I drove to 1220 Woodberry and verified that the Waste Connections trash can was positioned at the end of the driveway for pickup. I then met with the representatives from Waste Connections nearby. The two Waste Connections employees then travelled to 1220 Woodberry and collected the trash from that residence only. I maintained surveillance on the Waste Connections employees as they collected the trash and then followed them to a pre-determined location where I took custody of the trash. A subsequent search of the trash retrieved from 1220

Woodberry Dr resulted in the discovery of no less than three plastic packages wrapped in black vinyl tape that appeared to have been cut open and the contents removed. One of the packages contained a white powdery substance and one of the packages contained a residual amount of a crystalline substance consistent with methamphetamine. I know from my training and experience that the manner and size of each of these packages is consistent with a one kilogram quantity of controlled substances. Also located was a gallon sized zip-lock style plastic bag with a white powdery residue. A presumptive field test was conducted on the gallon size zip-lock bag which resulted in a positive response for the presence of cocaine. A presumptive field test was conducted on the crystalline substance contained in the plastic package wrapped in black vinyl tape, which resulted in a positive response for the presence of methamphetamine. In addition to the packaging, agents located what appeared to be a ledger detailing monies owed for various amounts of controlled substances by various people, including an entry that read "Ralph – 1 grey 90 percs 1 clean". I know from training and experience that "percs" refers to Percocet, a brand name narcotic containing Oxycodone. Also found throughout the trash was a box of baking soda with the top removed, multiple torn plastic baggies, plastic baggies with the corners removed, multiple empty bottles of melatonin, and a receipt attached to a dry cleaner bag that read "Elvis Johnson 865-406-2521, $44 paid, #1 wash $40 Dry". "Elvis Johnson" is the name associated with the Apple ID associated with Brandon EDWARDS's iPhone as described in paragraph 10 of this affidavit. Your affiant knows from training and experience that the torn plastic baggies are indicative of the packaging of controlled substances and that sleeping aids, such as melatonin, are often used as adulterating agents for heroin and fentanyl. Also found in the trash was a receipt from the Crown Plaza hotel reflecting the rental of a hotel room by Brandon EDWARDS and a receipt from a

12

Dollar General Store in Knoxville, dated November 15, 2022, reflecting the purchase of several bottles of melatonin.

17.         On November 28, 2022, I received a call from Utah Kimball, a supervisor at Waste Connections, the waste removal service that assisted in the trash pull operation referenced in paragraph 17 of this affidavit. Mr. Kimball advised that one of his trash truck drivers, Charlie Brown, had been approached by an individual inquiring about his trash being taken by someone other than Waste Connections. Mr. Kimball advised that Jason McCue, who is a district manager for Waste Connections, would be able to provide more information and provided me with the Mr. McCue's phone number. I made contact with Mr. McCue, who advised that the truck that was approached was equipped with a forward facing dashboard camera and a camera that captures video and audio of the cab and driver. Mr. McCue advised that he would obtain the video from the encounter and provide it to me. On November 29, 2022 I received two videos via email from Jason McCue with Waste Connections. Upon reviewing the forward facing dash-cam video, I observed that the encounter occurred on Martin Luther King Jr Ave in front of Vine Middle School in Knoxville, TN. I observed the two door white Cadillac known to be driven by Brandon EDWARDS parked in the street in front of the Waste Connections truck and a black male in brown hoodie walking from the direction of the Cadillac toward the front of the truck. Upon reviewing the video and audio from the cab of the truck, I observed the male in the brown hoodie reaching into the driver's window of the cab and dropping what appears to be money into the truck. The black male then tells the driver that he stays off Merchants Rd and explains that someone took his trash can while there was trash still in it, and replaced it with a new trash can. The black male in the brown hoodie asks if that is normal procedure for Waste Connections, explaining that he thinks "it was the goddamn police". After a brief exchange, the driver tells the black male in the brown

13

hoodie that he needs to tell him something. The driver then exits the Waste Connections truck and he and the black male walk out of the range of the video and audio. After approximately two minutes, the driver walks back into the range of the video and audio. The driver and the black male in the brown hoodie exchange phone numbers, with the black male in the brown hoodie identifying himself as "Nineteen". "Nineteen" is the known street name for Brandon EDWARDS. Following the encounter, the black male who identified himself as "Nineteen" gets into the driver's seat of the Cadillac and drives away. Charlie Brown gets back into the Waste Connections truck begins to make comments, apparently to himself, regarding the conversation. Mr. Brown states "They came and got his trash... They took it somewhere and searched it..."

18.     Upon reviewing the court-authorized geo-location information for Brandon EDWARDS's phone number in the days following the interaction with the Waste Connections employee, I observed that Brandon EDWARDS appeared to significantly change his pattern of activity. The information indicated that Brandon EDWARDS was no longer in the area of 1220 Woodberry Dr. Upon making an information request to the Knoxville Utilities Board, I learned that the utilities at 1220 Woodberry were terminated on December 5, 2022 due to non-payment. Furthermore, during multiple surveillance attempts at 1220 Woodberry, officers observed that the vehicles that had previously been parked in the driveway were no longer present and the house appears to have been abandoned.

19.     On December 4, 2022 at approximately 3:30 p.m., the court authorized geo-location emails pertaining to 865-406-2521 began to indicate an "absent subscriber". Upon contacting Sprint / T-Mobile, DEA analysts were advised that the subscriber for 865-406-2521 had terminated that phone number and obtained a new device with a new phone number, but was still utilizing

Sprint/T-Mobile service. An analysis of call detail records for several of Brandon EDWARDS' most frequent contacts ultimately led to the determination that Brandon EDWARDS began using telephone number 865-443-5292 on the same day the previous number was terminated. On December 12, 2022, United States Magistrate Judge Jill McCook signed a warrant authorizing the interception of geo-location information associated with the new phone number.

20.     On December 12, 2022, United States Magistrate Judge Jill McCook signed a warrant authorizing the search of 215 Odd Fellows St. On December 15, 2022, the search warrant at 215 Odd Fellows St was executed by the DEA, KPD, and ATF. During surveillance operations prior to the execution of the warrant, officers observed the white Cadillac registered to Brandon EDWARDS at 215 Odd Fellows St. Upon executing the warrant, officers located Azely TAYLOR, Robert WARR, and Gregory JOHNSON inside the apartment. The search of the apartment pursuant to the search warrant resulted in the discovery of approximately 600 grams of suspected cocaine, approximately 250 grams of suspected fentanyl, approximately 200 grams of suspected methamphetamine, five loaded firearms, a large amount of U.S. currency, and paraphernalia for the packaging and distribution of controlled substances. TAYLOR, WARR, and JOHNSON were all arrested and charged by federal criminal complaint with drug and weapon charges.

21.     On December 21, 2022 this case was presented to the Grand Jury in the Eastern District of Tennessee, which resulted in the indictment of Brandon EDWARDS and others for conspiracy to distribute cocaine, methamphetamine, and fentanyl. Subsequent to the Grand Jury findings, a warrant was issued for the arrest of Brandon EDWARDS. In an effort to locate EDWARDS, I began to review the court-authorized geolocation "pings" associated with EDWARDS phone number. The geolocation "pings" indicated that the phone had been spending recent overnight

15

hours in Fountain City area of North Knoxville. On December 24, 2022, I began to circulate the area indicated by the geolocation information and located the white Cadillac registered to Brandon EDWARDS back into a parking space directly in front of the TARGET LOCATION. I also observed the red Chevrolet Camaro registered to Brandon EDWARDS parked in a parking space behind the TARGET LOCATION. During several surveillance operations since that time, I have observed these vehicles parked at that location. A continued review of the court-authorized geolocation information, combined with surveillance operations, has indicated that when one of the above described vehicles is not present at the TARGET LOCATION, the phone is also not present. When both vehicles are present at the TARGET LOCATION, the geolocation information indicates that the phone is also in the area.

22.     On December 28, 2022, the DEA, with assistance from the United States Marshal's Service, conducted an operation to arrest Brandon EDWARDS and other members of the DTO pursuant to the outstanding arrest warrants. At the onset of the operation, I began conducting surveillance at the TARGET LOCATION and observed that the red Chevrolet Camaro was parked behind the TARGET LOCATION but the Cadillac was not there. The geolocation information indicated that the telephone was also not in the area. I continued to monitor the geolocation information, which indicated that the phone travelled to various parts of Knoxville throughout the morning. At approximately 11:00 am, officers observed the white Cadillac pull into the parking lot and begin to back into the space directly in front of the TARGET LOCATION. Officers then approached and took Brandon EDWARDS into custody without incident. When asked which apartment he was going to, EDWARDS refused to answer and asked for an attorney before any questioning could take place.

23.    KPD K-9 Officer Kevin Aguilar responded to the scene at my request.  Officer Aguilar

directed his drug detecting K-9 partner "Ugo" to conduct a free-air sniff around both the Cadillac

that EDWARDS was driving and the Chevrolet Camaro registered to EDWARDS that was

parked behind the TARGET LOCATION.  "Ugo" alerted to the odor of controlled substances

around both vehicles and searches were conducted.  During a search of the Cadillac, officers

detected a very strong odor of marijuana inside the vehicle.  Officers located a small plastic bag

containing an unknown number of white pharmaceutical tablets in a small cross-body style bag.

During a search of the Camaro, officers located a sock that contained a large amount of U.S.

Currency in the locked glove box.  Officer Aguilar has been a police officer in Knoxville, TN for

over three years.  He has been a K-9 handler for over two years.  Officer Aguilar received the

initial 240 hours of K-9 training with "UGO" at the Knoxville Police Department.  Since that

time, Officer Aguilar and "UGO" have received additional specialized police K-9 training from

the International Police Work Dog Association.  "UGO" has maintained at least 95% or higher

correct response in training related to narcotic detection during training exercises and

certifications.  Officer Aguilar's K-9 partner "UGO" was last certified in narcotic detection by

the International Police Work Dog Association on June 2, 2022.  "UGO" is certified in the

detection of marijuana, cocaine, methamphetamine, heroin, and MDMA.

24.    While on the scene of the arrest at the TARGET LOCATION, offices were approached

by Jerni Souto, who identified herself as the assistant manager of the apartment complex.  Ms.

Souto stated that she was not familiar with Brandon EDWARDS, but stated that the TARGET

LOCATION had been rented less than one month ago by a female named Tanijah Moran using

telephone number 865-773-8731.  Upon searching call detail records for phone numbers known

to be used by Brandon EDWARDS, I found that 865-773-8731 had several hundred telephonic

contacts with Brandon EDWARDS during the course of this investigation. I then contacted Ms. Moran at the phone number provided by Ms. Souto. After identifying myself and explaining the situation, Ms. Moran indicated that she does not live at the TARGET LOCATION, but did rent the apartment less than one month ago. She stated that Brandon EDWARDS has a key to the TARGET LOCATION and has been staying there. Based on my training and experience, and knowledge of this investigation, I know that drug distributors will often recruit others to rent properties in their names in an effort to insulate themselves from criminal activity.

25.     Based on the totality of the circumstances, I believe that Brandon EDWARDS previously utilized his residential address at 1220 Woodberry Dr as a base of operations to store, package, manufacture, and distribute controlled substances. I believe that following the trash pull operation, Brandon EDWARDS became concerned about law enforcement detection and abandoned 1220 Woodberry Dr. I further believe that Brandon EDWARDS then reestablished his residential base of operations at the TARGET LOCATION and therefore there is probable cause to believe that the evidence described in Attachment B will be stored within that location.

FURTHER AFFIANT SAYETH NAUGHT.


_____
Philip M. Jinks
Task Force Officer
Drug Enforcement Administration


Subscribed and sworn to before
me on the 28th day of December,
2022.

_____
Debra C. Poplin
UNITED STATES MAGISTRATE JUDGE

18

## Attachment A

Search Warrant, 3101 Essary Dr (West Apartment) Knoxville, Tennessee 37918

TARGET LOCATION

3101 Essary Rd (West Apartment), Knox County, TN is further described as a single family, single level apartment residence located in the Essary Manor apartment complex, which is located on the north side of Essary Rd near the intersection with Stanton Rd. The building containing the TARGET RESIDENCE is a single level duplex containing two separate apartment residences. There is no visible external numbering indicating the apartment numbers, but both are addressed at 3101 Essary Rd. The TARGET LOCATION is the apartment located on the left (west) half of the building. The front door of the apartment is located on the south side of the building, facing Essary Rd. The front door of the TARGET APARTMENT is white in color and has a mail slot in the center of the door. The rear door of the apartment is accessed from a parking lot on the north side of the building. The building containing the TARGET LOCATION is constructed of red brick with white window shutters. There is a concrete porch on the front of the building that allows access to the front doors of both apartments. The porch is covered by a porch roof with white trim and columns. A set of concrete stairs lead from the parking lot to the left side of the porch. A concrete ramp leads from the parking lot to the right side of the porch. The number "3101" is posted in black numerals on the front of the porch roof.

Driving directions are as follows: From the Knoxville Police Department, 800 Howard Baker Jr Ave, travel west on Howard Baker Jr Ave. Turn right (north) onto Hall of Fame Dr.

19

Continue on Hall of Fame Dr until merging onto northbound N. Broadway. Continue on N. Broadway until the intersection with Essary Rd. Turn right (east) on Essary Rd. After passing the intersection with Stanton Rd, The TARGET LOCATION will be on the left (north) side of Essary Rd.







22

**Attachment B**

Search Warrant (Items to be Searched)

**Attachment B**

Search Warrant (Items to be Searched)

- Printed or digital property that includes records, receipts, notes, ledgers, and other papers and packages relating to drug trafficking to, from, and within the Eastern District of Tennessee, including but not limited to receipts, papers, tickets, notes, schedules, and other items relating to transactions, address books, telephone books, and papers reflecting names, addresses, and telephone numbers of associates including drug associates, customers, and/or suppliers;
- Bank statements and records, wire transfer documents including wire transfer receipts, receipts of money orders and cashier's checks, deposit bank records, keys to safe deposit boxes, and keys, access codes, and records relating to storage facilities, all of which evidence the obtaining, transferring and concealment of assets associated with or obtained through drug trafficking;
- United States currency and financial instruments, including but not limited to stocks, and bonds, and vehicle title documents, all of which constitute the proceeds of drug trafficking and which constitute the operating capital for continued drug trafficking;
- Photographs of drug customers and suppliers and other coconspirators in the drug trafficking trade and photographs of assets or of controlled substances;
- Controlled substances and paraphernalia for packaging, cutting, weighing, and distributing controlled substances, including, but not limited to, scales, pill presses, baggies, tourniquets, and syringes;
- Firearms, ammunition, and firearm accessories possessed with controlled substances; and
- Electronic devices, including, without limitation, cellular telephones, tablets, laptop computers, desktop computers, camera recording devices, and external storage devices

All of which constitute evidence of the commission of a criminal offense, contraband, the fruits of a crime, and property designed or intended for use or which is or has been used as the means of committing the above-described criminal offenses.